UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CANDACE MACE, | |
| Plaintiff, | |
| v. | CASE NO. 3:20-CV-412-MGG |
| JOHN RAY d/b/a 7-11 CORPORATION, | |
| Defendant. | |

**OPINION AND ORDER**

**I.   INTRODUCTION**

This case arises in response to an incident at a 7-Eleven store that Defendant John Ray owns. Plaintiff Candace Mace entered the 7-Eleven with her service dog, Clea, to purchase a drink and make change for her bus fare. As Mace entered the store, Ray informed her that dogs were not permitted in the store and that she must leave immediately. Mace attempted to inform Ray that her dog was a trained service animal that assisted her with her epilepsy, but Ray dismissed her after he asked the opinions of some other customers in the store. Following some animated back and forth that included raised voices, tears, and a phone call to the police, Mace did eventually leave. Afterwards, Mace experienced depression and extreme social anxiety for which she has sought medical treatment. Despite having been a frequent customer of Ray's store in the past, and the store's close proximity to her home, she has never returned to Ray's store, nor any other 7-Eleven since the incident.

Based on her removal from the 7-Eleven and her resulting adverse health effects, Mace filed this lawsuit against Ray alleging a past and ongoing violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12182, and intentional infliction of emotional distress ("IIED") under Indiana state law.

After the close of discovery in September 2021, Ray filed a motion for summary judgment that is now fully briefed and ripe before the Court. Ray separately filed a motion to strike certain statements in Mace's response brief.[1] The undersigned now issues the following opinion and order with jurisdiction conferred by the parties' consent and 28 U.S.C. § 636(c).

## II.  RELEVANT BACKGROUND

The following facts are primarily not in dispute. For the purposes of this motion, any facts that are not addressed are taken as undisputed in accordance with Fed. R. Civ. P. 56(e)(2). Where any disputes do exist, they are either immaterial or are addressed in the Court's substantive analysis of the issue.

Mace suffers from numerous disabilities, including epilepsy, hearing impairment, chronic migraines, and limited mobility following surgery. Due to this, Mace takes multiple medications and receives Social Security disability benefits. Mace also obtained a cream golden retriever service dog named Clea from Northern Indiana

---

[1] At the time this motion was filed, the Court's Local Rules required that, "[a]ny dispute regarding the admissibility of evidence should be addressed in a separate motion in accordance with L.R. 7-1." N.D. Ind. L.R. 56-1(e) (effective November 18, 2019). A recent revision of the Local Rules in February 2022, however, changed that requirement. Now Local Rule 56-1(f) prohibits the filing of separate motions to strike and requires parties to raise disputes about admissibility or materiality of evidence in their summary judgment briefs. As Ray's motion to strike complied with the effective local rule when it was filed, the Court will address it on its merits alongside the underlying motion for summary judgment.

Service Dogs to assist her. Clea can alert Mace of oncoming epileptic seizures and aid her during an episode by activating a device implanted in Mace designed to reduce the intensity of seizures.

On August 21, 2019, Mace entered Ray's 7-Eleven with Clea. Ray informed Mace that dogs were not permitted in the store and told her to leave. Mace responded that Clea was a service dog. Ray asked her why she needed a service dog, and Mace told him she suffered from epilepsy. Ray replied, saying, "Well, you look perfectly fine to me. Take the dog and go outside." Ray then turned to another customer and said, "She's telling me she has epilepsy. She looks perfectly fine to me. What do you think?"

Mace tried to reiterate that Clea was a service dog, and that she was only seeking to purchase a drink to make change for a bus fare. Ray told her, "That's not my problem. My problem is you in here. I need you to be out." Mace then tried to show Ray a card that documented Clea as a service animal and provided the obligations of a public accommodation under the ADA. Ray did not look at the card but instead told Mace, "Just because you have something wrapped around it doesn't make it a service dog." [2] [DE 34-1 at Video 3]. That something was in fact a service vest. He then repeated that she needed to leave the store.

Rather than leave the store, Mace sought the help of another customer to make change for her bus fare. Ray interjected, because now not only was Mace defying his no-

---

[2] Three brief videos of the incident at issue were filed manually with the Court [DE 35]. They are cited as part of Mace's Declaration as [DE 34-1] when used to provide direct quotations from the incident.

3

animal policy, but she was also violating his policy against soliciting patrons. He then called the police.

After the police arrived, they told Mace that she was on private property and that the owner did not want the dog to get near any food. The officers then escorted Mace to the bus stop. Later, Mace published three brief videos she had taken of the encounter on social media.

### III. ANALYSIS

#### A. Motion to Strike

As a preliminary matter, Ray asks the Court to strike certain statements made by Mace as inadmissible hearsay that should not be considered. Ray first seeks to strike Mace's use of her own deposition testimony in her response in which she cites statements allegedly made by a customer to Ray during the incident at issue. Ray also asks that statements made by Mace in both her response and declaration "related to certain social media postings, including actions and reactions by unknown third parties" be stricken. [DE 37 at 2, ¶ 8(b)].

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, motions to strike are typically disfavored, "and usually only granted in circumstances where the contested evidence causes prejudice to the moving party." *Rodgers v. Gary Cmty. Sch. Corp.*, 167 F. Supp. 3d 940, 948 (N.D. Ind. 2016). Yet, even without the impetus of a motion to strike, it is the responsibility of the Court to carefully review the parties' statements of material facts and genuine issues, and

4

disregard any argument, conclusions, or assertions that are unsupported. *Mayes v. City of Hammond, IN*, 442 F. Supp. 2d 587, 596 (N.D. Ind. 2006). This process can result in the objected material being set aside by the Court, making the motion to strike unnecessary. *See Wajvoda v. Menard, Inc.*, No. 2:11-CV-393, 2015 WL 5773648, *3 (N.D. Ind. Sept. 30, 2015).

      Here, none of the allegedly inadmissible statements made by Mace needed to be credited to resolve Ray's motion for summary judgment. Accordingly, no weight was given to the statements Mace made, and they were not used in determining the outcome of the underlying motion for summary judgment. Thus, there is no prejudice against Ray warranting striking the statements.

      Therefore, Ray's motion to strike is **DENIED** as unnecessary. [DE 37].

      **B.    Motion for Summary Judgment**

      Ray asks the Court to grant summary judgment on Mace's ADA claim arguing that Mace lacks standing because she cannot show a real and immediate threat of a future violation of her rights necessary to seek injunctive relief. He contends that Mace can only provide a mere profession of an intent to return that is insufficient to qualify as a real and immediate threat of injury.

      Should Mace's ADA claim be dismissed, Ray requests that her supplementary state law claim of IIED also be dismissed in the interests of judicial economy. Should Mace's IIED claim remain, Ray seeks summary judgment arguing that his actions were neither extreme nor outrageous, and he did not intentionally or recklessly harm Mace.

5

**1.     Legal Standard**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir. 2003).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex*, 477 U.S. at 322–23; *Modrowski v. Pigatto,* 712 F.3d 1166, 1168 (7th Cir. 2013) Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."

6

*Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### 2. Americans With Disabilities Act Claim

Ray gives two arguments as to why, even if his actions on August 21, 2019, constituted a violation of the ADA, Mace lacks standing to bring an ADA claim. First, Ray contends that Mace has failed to demonstrate anything more than a mere "profession of intent" to return insufficient to meet the requirements of standing for injunctive relief. Second, Ray argues that if Mace's claim that she was trespassed[3] from the store is accurate then she could not return to the store anyway, eliminating the possibility of her rights being violated there. For the purposes of clarity, these arguments will be addressed in reverse order.

#### a. "Trespassed" from Property

Mace argues that she is facing continuing discriminatory treatment from Ray preventing her from returning to 7-Eleven. During her deposition, Mace testified that Ray told her, "Well, you'll never be back here." [DE 30-3 at 36:8-9]. Moreover, when officers arrived on the scene, they informed her that Ray had trespassed her from the property, meaning she would not be able to return without facing risk of criminal or civil penalties.

Ray contends that he did not trespass her from the store, but simply prohibited her from being present with her dog in the single instance. He testifies he would be

---

[3] Being "trespassed" means that a law enforcement officer has notified the person that they have been placed on a no trespass list and warned them not to return. Concurrently, a report is done to document the warning. *See Travis v. State*, 812 N.E.2d 826, n. 1 (Ind. Ct. App. 2004).

willing to have Mace return and, if the local health code permits, that her service animal could return as well. However, he states that if Mace's claim that she was trespassed is accurate then he is immunized from suit. According to Ray, if Mace was trespassed, she could not return to the store and therefore could not be subjected to an ADA violation. As such, Ray argues that she faces no risk of imminent injury and lacks standing.

Generally, a single instance of past discrimination is insufficient to confer standing for injunctive relief if unaccompanied by continuing, present adverse effects. *City of Los Angeles v. Lyons*, 461 U.S. 95, 95-96 (1983). However, if the plaintiff reasonably fears ongoing violations and is refraining from particular conduct on account of that, an ongoing injury is occurring and standing exists. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184-85 (2000) (holding that affiants had standing where they refrained from using waterways on account of a company's "continuous and pervasive discharge of illegal pollutants into a river").

As to when an individual is "trespassed" from a property, that is an action taken by the police at the request of the property owner. *See A.T. v. State*, 862 N.E.2d 332 (Ind. Ct. App. 2007) (holding that a private property manager had the authority to deny a person entry and have them placed on a no trespass list with the police); *see also Travis v. State*, 812 N.E.2d 826 (Ind. Ct. App. 2004) (holding that although officers can tell someone to leave a property, they have no inherent or statutory authority to place them on a no trespass list like a private property owner can). In other words, "the right to shoo away strangers belongs to the owner of the property and her agents" *Pourghoraishi*

8

*v. Flying J, Inc.*, 449 F.3d 751 (7th Cir. 2006), as amended on denial of reh'g (May 25, 2006) (citing to what is now Ind. Code Ann. § 35-43-2-2(b)(2)).

Here, Mace states that Ray told her that she would never be back and that the officers notified her that Ray trespassed her from the property. Based on these facts, Mace contends she has established standing because Ray, the private property owner with authority to trespass her, effectively denied her access to his store on account of her use of a service dog on August 21, 2019. In other words, Mace has a reasonable fear that she will be subject to civil or criminal penalties—that she faces an imminent threat of injury—by attempting to return to the store with her service animal if Ray has trespassed her. *See Friends of the Earth*, 528 U.S. at 184–85. Ray, however, disputes Mace's contention that he has permanently barred her from the property and asserts that she is welcome to return. Indeed, if Ray has not barred Mace from the property and he is willing to accommodate her disability, then Mace would not face an imminent threat of injury and might not be able to establish standing under the ADA.

Thus, Mace has established a genuine dispute of material fact as to whether Ray barred Mace from the property by means of a no trespass notice. As a result, the question of standing cannot be decided as a matter of law at this time thereby precluding summary judgment on Mace's ADA claim.

### b. Intent to Return

The parties also dispute whether Mace has the intent to return to the 7-Eleven necessary to establish standing. Ray contends that Mace has not demonstrated concrete and particularized plans to return to his 7-Eleven. Mace, however, argues that the

frequency of her past visits and the proximity of her home to the store create a reasonable inference that she would return if she would not suffer ongoing violations of her rights under the ADA.

It is a well-established principle that a party must have suffered, or imminently will suffer, an injury in fact to meet the constitutional minimum of standing. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). However, conditional statements that a party would return but-for ongoing violations cannot "be equated with the speculative 'some day intentions'. . . insufficient to show injury in fact" under *Defenders of Wildlife*. *Friends of the Earth,* 528 U.S. at 184. Instead, where ongoing violations are at issue, a party can create a reasonable inference of their intent to return to the public accommodation at issue based on the past frequency of her visits and the proximity of the accommodation to her home sufficient to meet the requirements of standing. *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1074-75 (7th Cir. 2013).

In *Scherr*, the court found standing for an Illinois plaintiff to sue a Kansas hotel upon a showing that she had multiple relatives in the area and an upcoming wedding. *Id.* at 1074. The court reasoned that these facts created a plausible inference that she would return to the hotel but-for its continued ADA violations. *Id.*

Likewise, this Court found standing in an ADA claim by a Florida resident against a public restaurant in Indiana where the plaintiff biannually visited the city where the restaurant was located for treatment of his disability and to see friends. *Abreu v. Harold's Chicken Shack #60, LLC,* No. 2:16-CV-243-JD, 2019 WL 1382902, at *3 (N.D.

10

Ind. Mar. 27, 2019). The frequency of the plaintiff's visits made it reasonable to infer he would return to the restaurant at issue if it were to rectify its continued ADA violations.

Here, Mace lives across the street from the 7-Eleven in question. In fact, during her remote deposition, Mace explained that she was looking out her window at the 7-Eleven as she testified. She also states that she shopped there weekly before the incident. Even Ray testified to having seen her in his store twenty to thirty times. [DE 30-2 at 16:2]. This level of frequency and proximity is much stronger than that in either *Scherr* or *Abreu* where in both cases the residents were several states away and visited at most twice annually. Taking this evidence in the light most favorable to the moving party, it is reasonable to infer Mace would return to Ray's store if there were no ongoing ADA violations—a fact the parties also dispute.

However, Ray contends that Mace's averment that she would return is contradicted by her prior testimony that she no longer patronizes his store [DE 30-3 at 42:14-15]. He insinuates that her affidavit should be disregarded on account of this. Instead, based on her prior testimony, he argues that since she is not currently a patron, she is not presently being subjected to discrimination on the basis of a disability.

Under the sham affidavit doctrine, "affidavits. . . offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy." *Beckel v. Wal–Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002). This rule, however, is to be used with great caution considering the jury's role in weighing credibility. *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir.

2016). The rule should only be applied in cases where the statements are inherently inconsistent, *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, n.10 (7th Cir. 1996), and the "the only reasonable inference [is] that the affidavit was a sham designed to thwart the purposes of summary judgment." *Funds in the Amount of $271,080*, 816 F. 3d at 908 (quoting *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir.2015)). In short, an affidavit may be disregarded as a sham only where the change in testimony is "incredible and unexplained." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (internal citations omitted).

Here, in light of the great caution which the Court is directed to use, it cannot be said there is an inherent inconsistency between Mace's prior testimony that she no longer patronizes his store and her averment that she would in the future were she not trespassed and was permitted to bring Clea. Rather, by raising the perceived discrepancy, Ray highlights that a genuine dispute exists as to whether Mace has been barred from entry on his property due to a trespass notice (see, *infra.).* Accordingly, it would be inappropriate to disregard Mace's affidavit. Thus, Ray's motion for summary judgment as to Mace's ADA claim is **DENIED** for multiple genuine disputes of material fact. [DE 28].

### 3. Intentional Infliction of Emotional Distress Claim

As Mace's federal ADA claim has survived summary judgment, the Court retains original jurisdiction over all her claims. Thus, Ray's request that the Court decline supplemental jurisdiction over her state law IIED claim is moot. 28 U.S.C. §

1367(c)(3). Accordingly, Ray's arguments for summary judgment on Mace's IIED claim are now considered.

Mace's IIED claim arises out of the same incident that brought her to file her ADA claim. Mace argues that the interaction she had with Ray when he ejected her from his store constituted IIED.

### a. Legal Standard for IIED

In order to establish the tort of IIED under Indiana law, "a plaintiff must prove that a defendant (1) engaged in "extreme and outrageous" conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress." *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997) (citing Restatement (Second) of Torts § 46 (1965)). To constitute "extreme and outrageous conduct" the behavior must be

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Creel v. I.C.E. & Assocs., Inc.*, 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2002) (citing Restatement (Second) of Torts § 46 (1965)). Cultural norms and values are also relevant to the determination of what is extreme and outrageous conduct. *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999). "In the appropriate case, the question can be decided as a matter of law." *Id.*

Here, Ray only raises arguments regarding the elements of extreme and outrageous conduct and intent or recklessness. Accordingly, the Court must assume

that there is no genuine dispute of material fact as to causation and the severity of Mace's emotional distress. *See Liberty Lobby*, 477 U.S. at 248 (holding that on summary judgment all reasonable inferences are to be drawn in the light most favorable to the nonmoving party); *United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991) (holding that perfunctory and underdeveloped arguments are waived).

### b. Extreme and Outrageous Conduct

Ray argues that his conduct during the Mace incident was neither extreme nor outrageous within the meaning of the tort. Ray testified at his deposition that he has a policy of not permitting any animals in his store because he believes the health code mandates that of him as a food vendor. [DE 30-2 at 14:25 – 15:3]. Ray also testified that he has a policy prohibiting customers from approaching other patrons within the store or in the parking lot. [DE 30-2 at 20:12-14]. According to Ray, he asked Mace to leave his store because she violated these policies by entering the store with an animal and by approaching another customer in the store to make change. Therefore, Ray argues that "[h]is actions were reasonable under the circumstances and consistent with how he would have treated another customer." [DE 30 at 9].

Conversely, Mace contends that Ray's conduct would be considered outrageous by an average member of the community and in fact was, as evidenced by Ray's statements regarding the public demonstrations against him. Ray testified that he was contacted by the corporate field representative for 7-Eleven who informed him that recordings of the incident had gone viral and that the company was receiving a large volume of calls regarding it. Shortly thereafter, Ray began receiving what he described

14

as, "a pretty constant barrage of phone calls, people calling me and disparaging me." [DE 30-2 at 31:19-20]. Ray said that this culminated with his store being picketed.

Ray's testimony regarding the calls to corporate complaint lines, his personal phone, and the picketing of his store evidence potential resentment against for a perceived violation of the cultural norms and values espoused by the local community. *See Creel*, 771 N.E.2d at 1282; *Bradley*, 720 N.E.2d at 753. Corporate and personal calls and even picketing does not necessarily tell the whole story though. Ray, after all, maintains he acted as he did simply to enforce his store policies and what he thought the health code required. From his perspective, his actions were in accord with how he would have treated any other customer that came into his store with a dog or who asked his patrons to make change for them. Nevertheless, Ray's statements regarding the community's response could lead a reasonable jury to find Ray's conduct extreme and outrageous despite his explanations. *See Matsushita*, 475 U.S. at 587; *see also Liberty Lobby*, 477 U.S. at 248. Accordingly, a genuine dispute of material fact exists as to whether Ray's conduct was extreme and outrageous.

      **c.**     *Mens Rea*

Even if his actions rose to the level of extreme and outrageous, Ray contends that he did not intentionally or recklessly harm Mace such that she cannot prove intentional infliction of emotion distress. *See Methodist Hosp.*, 690 N.E.2d at 691.

Conversely, Mace asserts that Ray "intentionally humiliated [her] because he believed she was faking a disability and pretending that Clea was a service dog." [DE 33 at 8]. Even if Ray's actions were consistent with his store policies, Mace contends that

15

a reasonable juror could conclude from his comments that Ray sought to punish Mace for a perceived abuse of the system and lie about Clea's status as a service dog.

It is intent to harm another emotionally which forms the basis of the tort of IIED. *See Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991); *Ledbetter v. Ross*, 725 N.E.2d 120, 124 (Ind. Ct. App. 2000). Intentions which may otherwise be tortious, criminal, or malicious and would entitle a plaintiff to punitive damages for any other tort do not alone satisfy the rigorous standard of IIED unless they are accompanied by a specific intent of, or recklessness as to, emotionally harming another. *Bradley*, 720 N.E.2d at 753 (citing the Restatement (Second) of Torts § 46 (1965)). Although the requirements of the tort are rigorous, a nonmoving party can prevail on summary judgment where they provide evidence sufficient to create a reasonable inference of intentionality or recklessness. *See id.* at 752.

Here, Mace has presented evidence sufficient to create a genuine dispute as to Ray's intent. First, Mace testifies that when she tried to explain to Ray that she was disabled and needed her service animal, Ray not only dismissed her but began asking other customers in the store whether she looked disabled. Video evidence confirms that when Mace tried to inform Ray of her rights under the ADA, he raised his voice and said, "This is my property. I can do what I please in my property." [DE 34-1 at Video 1]. The videos also corroborate that Clea was wearing a service vest, but that rather than taking this as a sign of the legitimacy of Clea's claims, Ray instead said, "Just because you have something wrapped around it doesn't make it a service dog." [DE 34-1 at Video 3]. After the fact, Ray himself testified that his interaction with Mace on that day

16

was likely humiliating for her. [DE 30-2 at 31:24-25–32:1-2]. Thus, despite Ray's conclusion to the contrary, the evidence leaves open the question of whether he intended to emotionally harm Mace. Accordingly, summary judgment as to Mace's IIED claim must be denied as she has presented evidence establishing multiple genuine disputes of material fact.

### III. CONCLUSION

For the reasons discussed above, Ray's Motion to Strike is **DENIED**. [DE 37]. As Mace has demonstrated genuine disputes of material fact as to the outrageousness of Ray's conduct and his intent to emotionally harm her, Ray cannot establish that he is entitled judgment as a matter of law at this time. Accordingly, Ray's motion for summary judgment is also **DENIED**. [DE 28].

**SO ORDERED** this 8th day of July 2022.

s/Michael G. Gotsch, Sr.<br>
Michael G. Gotsch, Sr.<br>
United States Magistrate Judge